UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARY JO McCABE,

                 Plaintiff,

        -against-

MAYNARD JAMES KEENAN; SOCIAL
SECURITY DISABILTY DEPT.; JOHN J.
McCABE FAMILY,

              Defendants.

1:23-CV-9396 (LTS)

ORDER OF DISMISSAL

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff Mary Jo McCabe, who is appearing *pro se*, invokes the court's federal question jurisdiction.[1] In her amended complaint, Plaintiff names as defendants: (1) Maynard James Keenan; (2) the "Social Security Disability Dept.," which the Court understands to be the Social Security Administration ("SSA"); and (3) the "John J. McCabe Family," which the Court understands to include the following individuals, who appear to members of Plaintiff's family: (a) John J. McCabe, (b) Patricia McCabe, (c) Brian McCabe, (d) Julie Thelen, and (e) Katie McCabe Vanderwig. Plaintiff seems to seek monetary damages and injunctive relief.

By order dated October 27, 2023, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees. For the reasons set forth below, the Court dismisses this action, but grants Plaintiff 30 days' leave to replead her claims in a second amended complaint.

---

[1] Plaintiff's amended complaint (ECF 4) is the operative pleading for this action. While Plaintiff states, in her amended complaint, that the term "amended complaint" "means [additional,] not a replacement," and that her amended complaint "adds info[rmation] to the case already filed" (*id.* at 1), an amended complaint is not a supplement to an original complaint. Rather, it "ordinarily supersedes the original [complaint] and renders it of no legal effect." *In re Crysen/Montenay Energy Co.*, 226 F.3d 160, 162 (2d Cir. 2000).

**STANDARD OF REVIEW**

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3). While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted, emphasis in original).

**BACKGROUND**

Plaintiff alleges that the federal constitutional or federal statutory bases for the court's federal question jurisdiction to consider this action are: "Freedom of religion, right to police, freedom of speech[,] due process, discrimination vs. sexual preference, race, education, he used stalking, libel, slander to try to enslave and lie about me for fraudulent finance/medicine." (ECF 4, at 3.) She asserts that the events that are the bases for her claims occurred, approximately, in 2003, and in September 2023, in Grand Rapids, Michigan, and in Brooklyn, New York.

Plaintiff also alleges the following:

I was working as a bartender in [Michigan] when Keenan visited me. He entrapped me and attacked me, although in a mental/psychic or emotional way. He always wanted to go for walks, pretending he was romantically interested in me, trying to dazzle me. He and a group of other people attacked me in such a way that it seemed that I had a mental diagnosis when in fact they attacked me. My family had done the same to me since I was a little girl, and they got viciously violent when I left the house (18 yrs old) with plans of going to graduate school to study law. I'm pretty sure the[y] had to do w/Keenan attacking me. I moved from [Grand Rapids, Michigan,] when I was in my late 30s, even though I had been

waiting my entire childhood to leave the family. I grew up and I moved to [New York City] and have noticed that some people have been stalking me, especially in the subway and in grocery stores, and a lot of them seem to be on drugs. About two months ago, I went to meditate at a Buddhist temple in Brooklyn. The monk there looked like Keenan and seemed like him too. I was shocked. I somehow saw pictures of him attacking my head and body in a sexual way, and I left. I had been raped a couple months earlier and I was beginning to think he had something to do with that. I have been homeless for years and I have tried so diligently to gain employment, find a safe city, or to make friends, and try to stay healthy – however, sometimes when I attempt to gain employment[,] I get openly attacked, or my phone/email get hacked; or sometimes I would wake up, when homeless [and] notice needle marks on my fingers [and] I don't not do drugs. I'm staying at a shelter in Brooklyn approximately ¾ [miles] away from the temple where I was recently attacked. I tried to go the 86th [and] the 88th [P]recinct[s] to make a police report. I also called [911]. At the 88th [P]recinct, I spoke to two officers; one named "Henry" on his badge, who coincidentally looks very similar to a man who works at the shelter I'm staying at. He refused to take a report [and] was condescending, maybe because police refuse to openly recognize attacks such as the one I have repeatedly endured. The other officer refused as well – They seemed more interested in the people in the station before or after me.

(*Id.* at 9-12.)

She further alleges the following:

I realize the [New York City Police Department] is maybe underfunded or maybe not used to speaking about all the terrible things they see. However, I've been put on hold for 25 or more years because of the type of blatant and aggressive desperate behavior that put my health and well-being behind others' "needs" to use or control me for something I'm not okay with. I saw Sam Bankman-Fried at least once in [Tennessee] when I lived there, [and] it was obvious he was there to threaten me. I was abused while during the time I lived in [Michigan] and received disability payments; abused and not disabled, even though police who overlooked or denied what was really happening to me, and doctors who used my health to study, surveil, and possibly used me as a panacea to cure or heal other ills, or maybe they just wanted a relationship with the many pharmaceutical producers.

(*Id.* at 12.)

In addition, Plaintiff alleges that:

Keenan and my birth family, the McCabes, and some ex-friends, such as Jennifer Hassa, Michael Bobenmoyer, Robert dela Rosa, and others I often see on the [Metropolitan Transportation Authority], have tried to produce a picture of me as mentally unsound, attacking others, racist, whoring, a criminal, and social unconscious or incapable when in fact, they are often those things. Within the past

3

year, the Albany police arrested a sex cult; one of the main members was one of my nurses at a psychiatric hospital, of that I'm almost sure. I notice many things in the paper, such as Trump's indictment, or I notice situations in my own life that have improved, however[,] whenever I attempt to gain a lawyer, something terrible usually happens in my life, contrived, and threatening, as if I am targeted. Some of this would make some people see me as paranoid, as if they should look past the 40 years people have had, paid off, maybe in checked silver, to study, gossip about me, and try to say they own me. I'm being trafficked and used as a slave of some sorts and there are people in the [SSA] who known this and refuse to help. I sometimes try to talk to police officers, and honestly, some of them often seem to struggle with something that attempts to keep them away from understanding or helping me, or taking what I'm saying seriously. If someone sometimes rapes me so violently that I almost pass out, and has done so for years; or if someone tries to claim their position in a church makes them allowed to restrict or govern my thoughts, yet they committee fraud doing so, and obviously do so illegally because they use me as a slave even if they lie or cover up the method/s in which they do so, I should be granted a lawyer and police protection, and remuneration from a government that has used me, wasted my time, has not communicated with me responsibly or that as have I agree to, that has stood by for years while I was raped, intimidated, abused, harassed, lied about, put on hold. I was tortured and certain people . . . make up excuses sometimes while . . . people attempt to openly try to harm me in terrible ways.

(*Id.* 12-13.)

In the injuries section of her amended complaint, Plaintiff states that:

I was drugged; I often was blacked out and woken up to find threats left, such as objects, around me. I was repeatedly raped, and sometimes harassed when I attempted to go to the hospital. I was physically assaulted several times, attacked on my head/face. I was threatened or attempted when I would attempt to be social in order to make friends. Possessions and a lot of money was stolen from me; my bank account is usually changed almost every month by charges I did not make [and] sometimes that don't show up on the ledger. I'm often attacked when I try to go to [a] church or temple of my choosing, or to express my spiritual beliefs by spending time in nature, or even things such as eating organic foods, expressing love or going to the library. I have been accused of being a racist by racists and people often try [and] make a picture of me being a child abuser when in actuality, I was abused so horribly as a child that I often couldn't function, really, or got so sick I would lose a large percentage of my body weight. I have been ostracized and shunned by their lies [and] intimidate[ed] probably for over 25 years.

(*Id.* at 11.)

4

Plaintiff seeks the following relief:

> I would like to be able to sue these [and] other individuals and companies, such as Bitcoin, tech, or [medical companies] that have profited from my abuse. I want police, lawyers and politicians to speak to me [and] not ignore me [and] protect me. I was trafficked for probably 40 years; the monetary remuneration would be staggering, if people would stop misusing me, and lying about me. I want to take graduate courses [and] make Fine Arts, as I am an artist. . . .

(*Id.*)

## DISCUSSION

The Court understands Plaintiff's amended complaint as attempting to assert claims under federal law, under the court's federal question jurisdiction, against the SSA, as well as claims under state law, under the court's diversity jurisdiction, against the remaining defendants.

### A.    Claims against the SSA

The Court must dismiss Plaintiff's claims against the SSA under the doctrine of sovereign immunity. This doctrine bars federal courts from hearing all suits against the federal government, including suits against any part of the federal government, such as a federal agency, like the SSA, except where sovereign immunity has been waived. *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)); *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994) ("Because an action against a federal agency . . . is essentially a suit against the United States, such suits are . . . barred under the doctrine of sovereign immunity, unless such immunity is waived.").

While Congress has provided a limited waiver of sovereign immunity in allowing judicial review of the final administrative decision of the Commissioner of Social Security with regard to an applicant's request for Social Security benefits, 42 U.S.C. § 405(g), (h); *see, e.g.*, *Stoothoff v. Apfel*, No. 98-CV-5724 (JGK), 1999 WL 493356, at *2 (S.D.N.Y. July 12, 1999), *aff'd*, 200 F.3d 204 (2d Cir. 2000) (unpublished opinion), Plaintiff does not seek such review in this action.

Congress has also provided another limited waiver of sovereign immunity, via the

Administrative Procedure Act, allowing for judicial review, which is not otherwise provided by

law, of any federal agency's final administrative action. *See* 5 U.S.C. §§ 702, 704; *Cnty. of*

*Suffolk v. Sebelius*, 605 F.3d 135, 140-41 (2d Cir. 2010). Yet, as above, Plaintiff does not seek

such review in this action.

In addition, as to damages claims against the SSA, "the United States has not waived its

sovereign immunity for claims . . . [for] monetary relief in addition to benefits awards." *Donnelly*

*v. Barnhart*, 80 F. App'x 701, 702 (2d Cir. 2003) (summary order).

Plaintiff does not allege any facts showing that she is asserting claims for relief against

the SSA for which Congress has waived sovereign immunity. The Court therefore dismisses

Plaintiff's claims against the SSA, under the doctrine of sovereign immunity, for lack of subject

matter jurisdiction, *see* Fed. R. Civ. P. 12(h)(3); *Springfield Hosp., Inc. v. Guzman*, 28 F.4th 403,

415-16 (2d Cir. 2022), and for seeking monetary relief from a defendant that is immune from

such relief, *see* 28 U.S.C. § 1915(e)(2)(B)(iii).

**B.      Claims against the remaining defendants**

Because Plaintiff seems to assert claims against the remaining defendants under state law,

the Court will examine whether she has alleged facts sufficient to invoke the court's diversity

jurisdiction to consider those claims.[2]

---

[2] Because the Court has dismissed all of Plaintiff's claims under federal law, it declines to
consider, under its supplemental jurisdiction, Plaintiff's claims under state law. *See* 28 U.S.C.
§ 1367(c)(3); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (Generally, "when the
federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims
remain, the federal court should decline the exercise of jurisdiction." (footnote omitted)). The
Court cannot, however, decline to consider claims under state law if it has original diversity
jurisdiction to consider those claims. *See* 28 U.S.C. § 1332(a).

The original subject matter jurisdiction of the federal district courts is limited and is set forth generally in 28 U.S.C. §§ 1331 and 1332. Under these statutes, a federal district court has original subject matter jurisdiction only when a "federal question" is presented or, if the plaintiff is asserting claims under state law under the court's diversity jurisdiction, when the plaintiff and the defendants are citizens of different States and the amount in controversy exceeds the sum or value of $75,000. "'[I]t is common ground that in our federal system of limited jurisdiction any party or the court sua sponte, at any stage of the proceedings, may raise the question of whether the court has subject matter jurisdiction.'" *United Food & Com. Workers Union, Loc. 919, AFL-CIO v. CenterMark Prop. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994) (quoting *Manway Constr. Co., Inc. v. Hous. Auth. of the City of Hartford*, 711 F.2d 501, 503 (2d Cir. 1983)); *see* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative.").

To establish the court's diversity jurisdiction, a plaintiff must first show that she and the defendants are citizens of different States. *See* 28 U.S.C. § 1332(a)(1); *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998) ("A case falls within the federal district court's 'original' diversity 'jurisdiction' only if diversity of citizenship among the parties is complete, *i.e.,* only if there is no plaintiff and no defendant who are citizens of the same State."). For diversity purposes, an individual is a citizen of the State where he or she is domiciled, which is defined as the place where a person "has his [or her] true fixed home . . . and to which, whenever he [or she] is absent, he [or she] has the intention of returning." *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) (internal quotation marks and citation omitted). An individual "has

but one domicile." *Id.* The plaintiff must also allege to a "reasonable probability" that his or her

claims under state law are in excess of the sum or value of $75,000, the statutory jurisdictional

amount. *See* § 1332(a); *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir.

2006) (citation and internal quotation marks omitted).

Plaintiff alleges that she is a citizen of the State of New York. (ECF 4, at 3.) She also

alleges that Keenan is "possibly [a citizen of the State of] Utah, although I've often seen him in

New York." (*Id.* at 5.) She does not allege the state citizenship of any of the members of the

McCabe family whom she also sues. Thus, Plaintiff does not allege facts showing that the

defendants are diverse. In addition, she does not allege facts sufficient to show that her claims

under state law are in excess of the sum or value of $75,000, the statutory jurisdictional amount

to invoke this court's original diversity jurisdiction. Accordingly, to the extent that Plaintiff

asserts claims under state law, under the Court's diversity jurisdiction, against any of the

remaining defendants, the Court dismisses those claims for lack of subject matter jurisdiction.

*See* Fed. R. Civ. P. 12(h)(3). Because Plaintiff is proceeding *pro se*, however, the Court grants

her leave to file a second amended complaint to allege facts sufficient to show that the court has

diversity jurisdiction of her claims under state law against the individual defendants.

**C.**     **Venue for Plaintiff's claims under state law**

Should Plaintiff file a second amended complaint, she should allege facts showing why

this court is a proper venue for her claims under state law. Under the applicable venue statute, 28

U.S.C. § 1391(b), such claims may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents
> of the State in which the district is located; (2) a judicial district in which a
> substantial part of the events or omissions giving rise to the claim occurred, or a
> substantial part of property that is the subject of the action is situated; or (3) if
> there is no district in which an action may otherwise be brought as provided in
> this section, any judicial district in which any defendant is subject to the court's
> personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). For venue purposes, a "natural person" resides in the federal judicial district where the person is domiciled, and any other "entity with the capacity to sue and be sued," if a defendant, resides in any federal judicial district where it is subject to personal jurisdiction with respect to the civil action in question. *See* § 1391(c)(1), (2).

Plaintiff does not allege any facts showing that all of the individual defendants are residents of the State of New York that at least one of them resides with this judicial district.[3] Thus, Plaintiff does not allege facts sufficient to show that this court is a proper venue for her claims under state law, under Section 1391(b)(1). In addition, because she alleges that the events giving rise to her claims under state law occurred in Grand Rapids, Kent County, Michigan, which lies within the Western District of Michigan, *see* 28 U.S.C. § 102(b)(1), and in Brooklyn, Kings County, New York, which lies within the Eastern District of New York, *see* 28 U.S.C. § 112(c), Plaintiff has also not alleged facts sufficient to show that this court is a proper venue for her claims under state law, under Section 1391(b)(2). Accordingly, because a transfer would not be in the interest of justice, the Court also dismisses Plaintiff's claims under state law as brought in the wrong venue. *See* 28 U.S.C. § 1406(a). In light of Plaintiff's *pro se* status, however, the Court grants Plaintiff leave to file a second amended complaint that alleges facts showing why this court, as opposed to the United States District Court for either of the other federal judicial districts listed above, is a proper venue for this action.

---

[3] This judicial district, the Southern District of New York, is comprised of the following New York State counties: (1) New York (New York City Borough of Manhattan); (2) Bronx (New York City Borough of the Bronx); (3) Westchester; (4) Dutchess; (5) Rockland; (6) Orange; (7) Putnam; and (8) Sullivan. 28 U.S.C. § 112(b). The Eastern District of New York is comprised of the following New York State counties: (1) Kings (New York City Borough of Brooklyn); (2) Queens (New York City Borough of Queens); (3) Richmond (New York City Borough of Staten Island); (4) Nassau; and (5) Suffolk. § 112(c).

**CONCLUSION**

The Court dismisses this action. The Court dismisses Plaintiff's claims against the SSA under the doctrine of sovereign immunity, for lack of subject matter jurisdiction, *see* Fed. R. Civ. P. 12(h)(3), and for seeking monetary relief from a defendant that is immune from such relief, *see* 28 U.S.C. § 1915(e)(2)(B)(iii). The Court declines to consider, under its supplemental jurisdiction, Plaintiff's claims under state law against the remaining defendants. *See* 28 U.S.C. § 1367(c)(3). The Court also dismisses Plaintiff's claims under state law against the remaining defendants for lack of original diversity subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). The Court further dismisses Plaintiff's claims under state law against the remaining defendants as brought in the wrong venue. *See* 28 U.S.C. § 1406(a).

The Court, however, grants Plaintiff 30 days' leave to replead her claims under state law against the remaining defendants in a second amended complaint in which she alleges facts sufficient to show that the Court has diversity subject matter jurisdiction of those claims and sufficient to show that this court is a proper venue for those claims. If Plaintiff fails to file a second amended complaint within the time allowed, the Court will direct the Clerk of Court to enter judgment dismissing this action for the reasons set forth in this order.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court directs the Clerk of Court to not terminate this action pending further order of the Court.

SO ORDERED.

Dated:     January 2, 2024
           New York, New York

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge

11